*316 Opi.NION op THE CQÜRT,
B5T JüDGE MlLLS.
THIS is an ejectment. There was first a verdict for the plaintiff, which the court below set aside, and grant-a new trial, and'on the second trial a verdict and judgement were rendered for the defendant below, from the lessors of the plaintiff have appealed, It is for that the court below erred
in granting a new trial. It was moved for, on the grounds that the verdict was against law and evidence; that the instructions of the court to the jury during the progress of the first trial were erroneous; and also on ¡jle ground of surprise, attempted to be proved by affidavits filed. On which of these grounds, the court below relied, in granting the new trial, we are not informed. We observe that the bill of exceptions there *317 taken, although it gives us a long history of the testimony, does not declare that it contains the whole of it, and, therefore, we cannot presume that the court below did wrong, and we shall not further notice this point. After the last trial, a motion was made by the plaintiff for a new trial, and overruled, and the opinion excepted to, and this exception likewise, or any other, does not profess to contain the whole evidence, and we shall, therefore, confine ourselves to the legal question made and decided by the court during the progress of the trial.
degd cuted under" such power of attorney, cannot be admitted as evto show title,
^eotmenr 10 may in some oases, recover °“ a bare p,os' without °D y’ showing title, has been an actual ouster of °- trespasser without col-of
Where thore absence proof of ti-tie on either ^mpHon^of title in favor of the first possessor, may be indulged.
*317 The lessors of the plaintiff proved that an early tent issued to Thomas Ransdale, for 1000 acres, cover-of ing the land in dispute; that Ransdale resided in Vir-is ginia; that a certain George Fowke, at the first settlement of that part of this country where the patent lay, in the year 1791 or 1792, entered and settled both self and others on the tract, claiming the whole of as his own, and representing that he held the bond Ransdale for a conveyance thereof, and shewed a writing purporting to be such bond; that after a short period, he also got a paper purporting to be a deed from Ransdale, but the time for recording it had expired. He then, as he said, got a second or third, still before the deeds arrived, or the papers purporting to be deeds, the time for recording had elapsed, and at length he procured, as he represented, Thomas Rans.dale to make a letter of attorney to Cuthbert Combs of this county, authorising him to convey. A letter of attorney was produced and offered in evidence, dated in 1795; but it was acknowledged in Virginia, before one justice of the peace, and certified by him, and the clerk of the court of the county certified his office under the seal of the court. This letter was produced to the proper court in this state, and there admitted to record on the credit on these testimonials. On the authentication it was offered as evidence in this cause, and rejected as not sufficiently proved. We would here dispose of this question, by remarking that we no impropriety in this decision. The letter of attor1 1 » • 1 ... ney was not so authenticated, as to etitle it to be corded according to the laws of this state, and it fore, could not be given in evidence as a recorded instrument, and no other proof of its execution was offered. The plaintiffs next offered in evidence a convey *318 anee of the land, purporting to be executed in the nameRansdale, the patentee, by the said Cuthbert Combs, his attorney in fact. This deed was properly acknowledged by the supposed agent, and recorded in the proper court. As the court below had rejected the letter of attorney, rejected this deed also, as incompetent to prove any thing, or for any purpose, even the extent of’ -yye perceive no injury to the plaintiffs, result-r ,, .1 , . . J J r 7 from this decision.
A holding land under bond from the patentee, cannot be adverse^ thereto.
accrues only with the nrantna°ndthe then ute eommences running.
^ standing title with which connectecl”" but persons Courts will not permit persons who come into possession wrongfully, to protect themselves under an out-coming into possession rightfully, may protect themselves by showing an outstanding tie. elder ti-
Fowke, however, still continued to reside on this-tract with his family, and to sell off and convey parcelsasthereof to others, until the year 1806, when he executed a conveyance of the residue to his two sons, then infants, residing in his family, who are the lessors of the and seperated from his family, and went to Virginia, avowing his intention never to return, where report has said he died in 1810 or 1811. His w^e a!K* children continued to reside on the land until died in the year 1810, when the family broke up but the farm in contest remained in the possession of a man w[10 had married one of the daughters, and of a tenant, who rented from the wife of Fowke, until the close of 1811, when William Chiles, who claimed the land by virtue of a patent issued to John Fowke, in the year 1810, entered upon the land, as no body resided. thereon at the time, and sold and conveyed it to the present tenants, who hold under him. At the time of the entry of Chiles, and those claiming under him, the two lessors of the plaintiff were - bound to trades, and one of them came of age shortly before the commencement of this suit, and the other during its pendency. The farm or portion of the 1000 acres in controversy, is the original settlement of Fowke.
The counsel for the lessors of the plaintiff, then moved a train of instructions, some of which were given and others refused, and we shall not notice them in <Jetad. They are certainly more numerous than necessary, and ^ear ^ marks °f a mind laboring with difficulty to reach the legal question in controversy, and still doubting whether this or that form would do it, or intending to embarrass the cause and ensnare the court below; and in this shape they cannot be entitled to high consideration,[either in that court or in this. Add to this, that some of them are made in language almost unintelligible. Some which were given, were given rightfully, *319 and others, from the state in which the record appears, might have been given or refused, perhaps with impunity.
_ Two of these questions made, however, one on the side ■of the plaintiff, and the other of the defendants, on which the cause appears to have essentially turned, deserve our consideration. The evidence concurred to show, that twenty years possession was complete in George Fowke and his family, before the entry of the present tenants. The plaintiff moved the court to instruct the jury, in substance, that the lessors of the plaintiff were entitled to recover on a less possession than twenty years, against those who had thus entered, even if the twenty years should not be found by them. The court overruled this application, and instructed that twenty years continuance of the possession by Fowke and those claiming under him, was necessary, and they could not recover upon less time.
The court also instructed the jury, on the applicar tion of the defendants, that if the lessors or their grantor, had occupied the land in controversy, twenty years under Ransdale’s patent, by bond only from him, still said possession was amicable with Ransdale’s patent, and inured to its benefit, and was not adverse thereto, •and, therefore, could not enable the lessors to i’ecover, and that the patent of Ransdale,itself, was a bar to their ■recovery.
These two decisions bore hard against their recovery. The first simply affirms, that they could not recover against the present tenants on a less time than twenty years possession, and the second, that if they had at that length of time, the patent under which they had held, prevented their receivipg the benefit of it. We shall consider these two questions in the order in which we have stated them.
As to the first, we have no doubt that there are cases where a plaintiff in ejectment may recover on a bare possession only, such as where there has been an actual disseizin or ouster of the tenant, and even where there has not been such ouster, and the defendant appears to be a trespasser without colour of title. The supreme1 oourt of New-York, has carried this principle as far, if not farther than the principles of the common law will permit. See Adams on Ejectment, 29. This principle may apply in cases where there is an absence of *320 pi’oof of title on either side. There it cannot be itri-3 proper to indulge a presumption of title in favor of the first possessor. We are, however, unwilling to extend the rule to a case where there is proof of title; and here, if there had been no proof of the patent of Ransdale, Fowke having acquired a patent from the commonwealth, it gave him a right of entry on ground not theretofore granted. The time which Fowke'or those holding under him, had held possession, could not run against the commonwealth, as was held by this court in the case of Chiles vs. Calk, 4, Bibb 554, and the patent would confer a right of entry. If then, there had been proof of Fowke’s patent alone, it would have been improper to have given the first instruction. But by showing the patent of Ransdale, it was proved that the patent of Fowke conferred no right of entry. This, however, could not help the plaintiff’s case; for while they thereby stripped Fowke’s patent of its authority to enter, they brought in their way another difficluty, and that is the second question above proposed; but it-clearly did not still wari’ant the first instruction asked, and the court did not err in refusing it; for, however applicable the principle might be in other cases, it did not. apply to this, where there was a colour of title-shown on both sides.
As to the second question made, the court was no doubt correct in saying that the possession of Fowke under Ransdale, without conveyance from him, did not take away from Ransdale the right of entry; and the inquiry is, ought the defendants to be permitted to avail themselves of this same patent as an outstanding title,to bar the very persons who had held under it? Courts; in modern times, have leaned considerably against permitting a defendant who came in by wrong, from protecting that wrong by the titles of others, with which' they were unconnected. That the tenants, or those under whom they hold, and who came in under the patent of Fowke, entered by wrong, there canbeno doubt;for, to whomsoever the right of entry belonged, it was not attached to the patent of Fowke. The possession was vacant, it is true; but it was left so under circumstances which destroyed all presumption of abandonment. Left by their parents, the lessors of the' plaintiff were incapable of acting for themselves, and as they had no one to act for them, to lease the land, and were *321 incapable of occupying it, the land was forsaken, and under these circumstances, the entry was made, and we should be inclined, if that entry had been made without colour of title, not to permit such an intruder to shield himself with the title of a stranger. But as that entry was made under a patent valid until another was presented of elder date, and as by the laws of this country, the equity and real title may be with such patent, notwithstanding its want of age,.and in its favor a decree might be rendered, requiring a release of all elder grants, we cannot say that these tenants are not entitled to the protection. The plaintiff must recover on the strength of his own title, and although the defendant may be in by wrong, and have no right, yet permitting the elder title in a stranger to be used, only keeps the plaintiff from possession when he has no right. It was correct, therefore, to permit the patent of Ransdale to operate as a bar to some extent.
The only doubt that could remain on the propriety of this instruction, is, whether if did not exclude from the jury the right to presume that Ransdale had conveyed to Fowke, and that the lessors had thereby acquired the legal estate, and it has been insisted that here is the great error contained in it. But a careful attention to the terms of the instructions, will show that it did not exclude such a presumption from the jury. It is hypothecated on the supposition that Fowke and his children had held by-bond only, and did not preclude the lessors of the plaintiff from insisting, and the jury from finding that the bond had been carried into effect by a conveyance of the legal estate. If this was not the case although it may seem to be attended with hardship and inconvenience to prevent the holder of an equity only from recovering in a court of law, yet the contrary principle is inflexibly settled, and the only way to avoid it, is by indulging, in some cases, the presumption of the conveyance of the legal estate. Adams on Ejectment, 32; 2 John. Rep. 221.
Judgment affirmed with costs.