Chattaroi Railway Co. v. Kinner, &c.

CASE 33—WRIT TO CONDEMN REALTY—JUNE 5, 1883.

# Chattaroi Railway Co. v. Kinner, &c.

4r 221
85 276
85 280

81 221
103 379

APPEAL FROM LAWRENCE CIRCUIT COURT.

1. A contract with the commonwealth arising out of the passage and acceptance of a charter must, by virtue of the act, invest the corporation with an absolute right of property, or confer such authority, which, when exercised, vests the corporation with such interests as are of appreciable value.

2. A special remedy given to a railway company for the condemnation of real estate may be repealed by a general act applying to all railroads. There is no element of a contract in the special remedy.

K. F. PRITCHARD AND W. C. IRELAND FOR APPELLANT.
No brief.

JOHN W. HAMPTON FOR APPELLEES.
No brief.

CHIEF JUSTICE HARGIS DELIVERED THE OPINION OF THE COURT.

The special provisions of the charter of the Chattaroi Railway Company authorized the condemnation and valuation of land for its right of way and construction, by warrant issued by a justice of the peace and trial by jury in the country.

Pursuant to those provisions the appellant company caused the warrant to issue and a jury to be summoned, who assessed the value of the lands of the appellees, and the latter appealed to the circuit court, which decided that the justice had no jurisdiction to issue the warrant or preside at the trial before the jury, because the special remedy for condemnation provided by the appellant's charter had been repealed by the general act of the legislature, approved April 11, 1882, prescribing "the mode of condemning land for the use of railroad and turnpike companies."

From the judgment of the circuit court the railway company has appealed, and assigned as error that the court erro-

neously held the proceedings should have been in accordance with the general law.  Other assigned errors will not be considered, because the decision upon the error named will dispose of the case.

The general law prescribes a wholly different mode of condemnation from that provided by appellant's charter.

The questions, therefore, which necessarily demand our consideration, are—

*First.* Whether the general law repeals the special remedy for condemnation of the citizen's property provided by appellant's charter.

*Second.* Does the charter of the company constitute a contract which cannot be varied by an·alteration of that special remedy?

It is provided in section 9 of the general act mentioned, that "all acts or parts of acts in conflict with this act are hereby repealed, including such special acts as may be passed at the present session of the general assembly."

The language of this section shows, expressly, an intention on the part of the legislature to repeal all former acts, whether general or special, which are in conflict with the act of which said section is a part.  And the clause which includes such special acts as were passed at the same session, was added to prevent a constructive repeal of the general law by inconsistent provisions of charters that might be granted to corporations, and to avoid the effect of the rule that statutes enacted at the same session shall be construed as one act, so far as. they relate to the same subject, unless the last is absolutely inconsistent with the first act or expressly repeals it.  There is no doubt, from the language used in the repealing section, that the legislature intended to adopt a uniform mode of condemning land for the use

of railroads and turnpikes throughout the commonwealth, and to break up and destroy the inconsistencies which prevailed in the special remedies provided by the numerous charters of corporations of that character.

As we understand the general notion of an inviolable contract with the state, arising out of the passage and acceptance of a charter, it must invest the corporation with an absolute right of property, or confer such authority which, when exercised, vests the corporation with such rights of property or interest as are of some appreciable value, and which, therefore, cannot be taken from the corporation by subsequent legislation against its consent; but the legislature has the power to enact any subsequent or amendatory law which regulates the remedy for enforcing corporate rights and privileges; so it does not, under the guise of regulating the remedy, impair the obligation of a contract, or which only operates on the relations between the corporation and other persons before any contract between them has been concluded, and interferes with no vested rights of the corporation. Before the appellant could become invested with title to the land of the appellees it was bound to make just compensation, pursuant to legal proceedings, before a court having jurisdiction. The mere fact that the appellant had entered and taken possession of the lands of the appellees, for which it does not appear that the appellant either tendered, paid, or secured the sum assessed by the jury, is no performance of the conditions precedent and essential to the investiture of title to the land under the special remedy for condemnation provided by the appellant's charter. Vested rights cannot be acquired, nor contracts made, by such acts and proceedings so as to justify the courts in protecting them as inviolable

under the constitutional sanctions against their destruction or impairment.   We do not think, therefore, that the appellant had any contract with the appellees at the time the general law was passed, nor was it possessed of any vested and immutable right to the remedy of condemnation prescribed by its charter; which did not, with respect to that remedy, constitute a contract in the constitutional sense. It has been held by the Supreme Court, 10 Howard, 395, that the state had the power, by legislative enactment, to grant a rehearing of cases of *ad quod damnum* after final judgment in a court of last resort, and before payment or tender of payment of the valuation upon which the title vested, and that such retrospective laws were constitutional.

In the case of Calder and wife v. Bull and wife, 3 Dallas, p. 386, the same court decided that the state legislatures had authority to award a new trial, or order proceedings in the nature of an appeal or writ of error after the commencement of litigation, and even after final judgment, and that such laws were neither *ex post facto* nor violative of the obligations of contracts. . If these authorities are sound, certainly the general act of the legislature, being in force at and before the commencement of these proceedings, is constitutional, and within the legislative power.

Wherefore, the judgment is affirmed.